IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Steel City Enterprises Inc,<br><br>Plaintiff,<br><br>v.<br><br>The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A to the Complaint,<br><br>Defendants. | Case No.: 1:23-cv-03252<br><br><br>**JURY DEMANDED** |

**BRIEF IN SUPPORT OF MOTION
FOR TEMPORARY RESTRAINING ORDER**

Plaintiff Steel City Enterprises Inc., ("Steel City"), by its attorneys, submits this Brief in support of its Motion for Entry of a Temporary Restraining Order ("TRO").

**INTRODUCTION AND SUMMARY OF ISSUES**

A TRO is appropriate in this case and should be granted against Defendants. As alleged in Plaintiff's Complaint, Defendants each sell the same or predominantly similar bottle caps which infringe Steel City's rights in U.S. Patent Nos. D977,973 ("the '973 Patent").

Currently, Defendants' ongoing infringing sales are having a detrimental effect on Plaintiff and, if not restrained by the Court, will continue to cause irreparable harm. Among other reasons, Defendants' infringing sales will lead to lost sales, loss of market share, and reputational harm (including loss of goodwill associated with Steel City's products). Moreover, the loss of an initial sale results in the loss of ongoing sales, such as replacements, and lost exposure to yet further customers. Thus, Steel City is losing market share due to Defendants' infringement.

Likewise, Defendants' acts of infringement have eroded Steel City's exclusionary rights embodied in the '973 Patent. Steel City does not typically license out its intellectual property. That is, Steel City is not a nonpracticing entity. To the contrary, Steel City aggressively exploits its intellectual property, including the '973 Patent, to develop, manufacture, and sell products to consumers. In other words, Steel City does not have a history of licensing the Asserted Patent, or its other intellectual property, other than as needed for Steel City to produce and sell its own products. The above-described harms are irreparable, immediate, and will continue to accrue throughout the proceedings in this case absent a temporary restraining order and, following a separate motion, a preliminary injunction. Therefore, an immediate temporary restraining order and eventual preliminary injunction, following appropriate service and notice, are necessary to prevent ongoing harm until a final determination on the merits.

I.  **STATEMENT OF FACTS**

   A.  **Steel City and the Patent-in-Suit**

Steel City is a privately-owned company that specializes in designing, manufacturing, and selling various houseware devices such as, among other things, current and previously sold versions of its "Jug Plug" bottle cap that embodies the '973 Patent. In connection with its research and design of new houseware device, Steel City developed particular designs and inventions relating to its Jug Plug product. Steel City filed for and was issued a design patent directed toward one of the ornamental designs for its Jug Plug, the '973 Patent. Steel City sells products that embody the '973 Patent, including its Jug Plug.  Steel City has marked its product listings for the products embodying the '973 Patent to inform customers and competitors of its patent rights.

### B. Defendants' Infringing Conduct

Defendants, like Steel City, appear to sell a variety of small home devices. As particularly relevant to this case, Defendants sell a bottle cap as shown in the claim chart attached to the Complaint. As set forth in detail in the Complaint and as further shown below, the accused bottle caps infringe upon the '973 Patent and Steel City's rights in the '973 Patents.

## II. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and, unless restrained, will continue to cause irreparable harm to Steel City, its reputation, goodwill, and market share. To stop this irreparable harm, Steel City respectfully requests that this Court issue a TRO ordering, among other things, the immediate cessation of sales of the infringing products, a recall of all infringing products currently on store shelves, and a cessation of advertisements for the infringing products. Without the relief requested by this Motion, Defendants' unlawful activity will continue unabated, and Steel City will continue to suffer irreparable injury for which there is no adequate remedy at law.

### A. Applicable Standards

Courts have the discretion to issue an injunction to "prevent the violation of any rights secured by patent." 35 U.S.C. § 283.[1] The right to exclude others is among the most valuable rights – if not the most valuable right – secured by a patent grant. *See Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("Indeed, the encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.") (internal

---

[1] With respect to the applicable standard, the Federal Circuit has explained that a preliminary injunction enjoining patent infringement pursuant to 35 U.S.C. § 283 "involves substantive matters unique to patent law and, therefore, is governed by the law of [the Federal Circuit]." *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012) (quoting *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1988)).

citations omitted). The purpose of a preliminary injunction is to preserve the status quo by preventing future infringement pending a determination on the merits. *Abbott Labs. v. Sandoz*, 544 F.3d 1341, 1344-45 (Fed. Cir. 2008) (citing *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981)).

Courts within this District apply the same standard for granting a temporary restraining order as for granting a preliminary injunction. *See, e.g., Long v. Bd. Of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001) ("standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions."). Generally, the party seeking an injunction must show that: (1) the movant is likely to succeed on the merits; (2) irreparable harm will result if the relief is not granted; (3) the balance of hardships to the parties weighs in the movant's favor; and (4) the public interest is best served by granting the injunctive relief. *See Titan Tire Corp. v. Case New Holland*, 566 F.3d 1372, 1375-76 (Fed. Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Abbott Labs v. Sandoz, Inc.*, 500 F. Supp. 2d 807, 815-16 (N.D. Ill. 2007) (citing *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 973 (Fed. Cir. 1996)).

Regarding the first factor, success on the merits means demonstrating that it is likely that the patent is infringed and that the patent will survive any invalidity challenges. *See Titan Tire*, 566 F.3d at 1376. Issued patents are presumed valid, and that presumption applies at trial as well as before trial. *Id.* at 1376-77. "Thus, if a patentee moves for a preliminary injunction and the alleged infringer does not challenge validity, the very existence of the patent with its concomitant presumption of validity satisfies the patentee's burden of showing a likelihood of success on the validity issue." *Id.* at 1377 (citing *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d

4

1359, 1365 (Fed. Cir. 2001) and *Canon Comp. Sys., Inc. v. Nu-Kote Int'lm Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).

Infringement of a design patent, and thus the likelihood of success in proving infringement, is analyzed under the "ordinary observer" test. *See Egyptian Goddess, Inc. v. Swisa*, 543 F.3d 665 (Fed. Cir. 2008). The test, as first enunciated by the Supreme Court in *Gorham v. White*, states that "[i]f in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." 81 U.S. 511, 528 (1871). In other words, if the accused bottle caps so resemble the design claimed in the '973 Patent such that an ordinary observer would be deceived into buying the accused bottle caps thinking it is the patented design, then the accused bottle caps infringe the '973 Patent. At this preliminary stage, Steel City need only show a likelihood of establishing infringement under the ordinary observer test.

The second factor, irreparable harm, means harms that cannot be fully remedied by a final judgment in the plaintiff's favor. *See H-D, USA, LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-C-3581, 2021 U.S. Dist. LEXIS 187253, at *10 (N.D. Ill. Sept. 24, 2021) (citing *Kraft Foods Brands LLC v. Cracker Barrel Old Country Stores, Inc.*, 735 F.3d 735, 740 (7th Cir. 2013). Irreparable harm can be shown by, for example, loss of customers and market share, particularly where the specific loss of customers is not easily quantifiable, and loss of goodwill and reputation. *See e.g., Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545-45 (7th Cir. 2021). Likewise, while the Supreme Court has rejected a presumption of irreparable harm stemming from the right to exclude in patent cases (*see eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)), that holding does not "swing the pendulum in the opposite direction" and thus

5

"[w]hile a patentee's right to exclude alone cannot justify an injunction, it should not be ignored either." *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1147, 1149 (Fed. Cir. 2011).

The third factor, the balance of hardships, is measured by weighing the possibility of irreparable harm to the non-moving party if the TRO is issued, balanced against the irreparable harm the moving party will suffer if the relief is denied. *See Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). This has been described as a "sliding scale" analysis. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). The more likely Plaintiff is to succeed on the merits, the less the balance of harms needs to weigh in its favor. *Chicagoland Aviation, LLC v. Todd*, Case No. 12-c-1139, 2012 U.S. Dist. LEXIS 167796, *6 (N.D. Ill. November 27, 2012) (citing *Christian Legal*, 453 F.3d at 859).

The Court weighs these factors, "sitting as would a chancellor in equity," when deciding whether to grant the requested TRO. *Ty, Inc.*, 237 F.3d at 895 (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)).

**B.     Steel City is Likely to Succeed on the Merits**

As noted above, likelihood of success on the merits of design patent infringement claims requires a showing of a likelihood that the design patent is being infringed and that would survive any challenge to validity. *See Titan Tire*, 566 F.3d at 1376. Here, Steel City alleges that Defendants are infringing its rights in the '973 Patent. Infringement of this design patent is governed by the "ordinary observer" standard.

The Claim Chart attached to Steel City's Complaint shows that the accused bottle caps are nearly identical to the claimed designs. In fact, it appears that the accused bottle caps are "carbon copies" of Steel City's own product that embodies the patent.

6

With respect to validity, the Court must only "make an assessment of the persuasiveness of the challenger's evidence" – if presented – "recognizing that it is doing so without all evidence that may come out at trial." *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882-83 (Fed. Cir. 1987). The Court need not resolve validity at this early stage. *Id.* At this point, because Defendants have not come forth with any challenge to the validity of the '973 Patent, the presumption of validity attached to all issued patents controls and is enough to establish a likelihood that the patent will survive an invalidity challenge. *Titan Tire*, 566 F.3d at 1377.

    C.    **Steel City Will Suffer Irreparable Harm in the Absence of a TRO**

The second element of the TRO/injunction analysis, whether Steel City will suffer irreparable harm absent the requested relief, "seeks to measure harms that no damages payment, however great, could address." *Celsis in Vitro, Inc., v. Cellzdirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012). Here, Steel City will be immediately and irreparably harmed if Defendants are not restrained from making, using, selling, and offering for sale the accused bottle caps. At a minimum, such harm consists of loss of the benefit of patent exclusivity and loss of market share as well as subsequent harm to Steel City's good will associated with its patented products and loss of repeat customers and exposure to additional customers through prior sales.

    i.    <u>Steel City Will Suffer Immediate Irreparable Harm as a Result of The Loss of Its Patent Exclusivity</u>

The ability to exclude others is fundamental to the patent right. *See Sanofi-Synthelabo v. Apotex Inc.*, 470 F.3d at 1383 ("Indeed, the encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude."); *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983) ("The very nature of the patent right is the right to exclude others."). That right is rendered meaningless where others are permitted to continue their infringement. This is particularly true because Steel City has its patent rights only

7

for a limited time. Likewise, Steel City has not licensed its rights under the '973 Patent to any other parties and has, instead, valued its exclusionary right. Thus, the inability to exclude others for any period of time during the term of the patent – including during the period of time necessary to reach a final judgment in this case – constitutes harm for which Steel City cannot be adequately compensated at law. Therefore, a TRO is necessary in order to preserve the status quo and Steel City's right to exclude others from practicing its invention.

In *eBay*, the Supreme Court rejected a presumption previously applied in patent cases that held that the right to exclude alone was sufficient to establish irreparable harm. *See eBay*, 547 U.S. at 394. Since that holding, however, courts have continued to look to the right to exclude as a relevant factor to consider when weighing the existence of irreparable harm. *See e.g.*, *Robert Bosch LLC*, 659 F.3d at 1149. This is particularly true where, as here, a plaintiff has shown a record of declining to license its patent rights and instead exploit the right of exclusion to further its interest in developing, marketing, and selling its own products.

    ii.    Steel City's Ability to Collect Monetary Damages as a Remedy for Infringement is, At Best, Uncertain

The Defendants in this case are each believed to be located in the People's Republic of China or other remote jurisdictions. They seem to primarily sell the accused bottle caps through the Amazon.com and eBay.com Marketplaces. This permits them a certain level of anonymity and evasiveness. Being entities without readily apparent domestic assets and operating through an online marketplace that shields their operations, it is reasonable to infer that collecting monetary damages against Defendants will be difficult, and potentially impossible. Such factors have been held to be significant in determining that a patent owner will suffer irreparable harm. *See Peng v. Partnerships*, No. 21-cv-1344, 2021 U.S. Dist. LEXIS 174254, at *7-8 (N.D. Ill. Sept. 14, 2021) (citing *Robert Bosch LLC*, 659 F.3d at 1155-56).

    iii.    <u>Steel City Will Suffer Immediate Irreparable Harm as a Result of a Loss of Market Share</u>

Additionally, absent a TRO, Steel City will suffer a loss of market share. Loss of market share constitutes irreparable injury for which Steel City has no adequate remedy at law. *See Black & Decker v. Robert Bosch Tool Corp.*, No. 04-C-7955, 2006 U.S. Dist. LEXIS 86990 (N.D. Ill. Nov. 29, 2006) ("Loss of market share is a key consideration in determining whether a plaintiff has suffered irreparable harm."). Steel City is an innovative player in the home device market and has developed its market share through development of unique products, including its Jug Plug product that embodies the '973 Patent. If this market share is lost due to Defendants' unlawful acts, it might never be recovered. Such loss cannot be remedied by mere monetary damages (or even a permanent injunction issued at the end of this case) and thus constitutes irreparable harm. *See Canon, Inc. v. GCC Intern. Ltd.*, 2006-1615, 2008 U.S. App. LEXIS 2429, *11 (Fed. Cir. 2008) ("Due to the difficulty (if not impossibility) of determining the damages resulting from price erosion and loss of market share, an award of money damages would not be sufficient.").

Here, it is clear that Steel City will lose market share if Defendants are not restrained from continuing their infringing activities. Steel City and Defendants are direct competitors in the small household device market and the competing bottle caps are sold through the same channels of trade. Specifically, Steel City's Jug Plugs that embody the '973 Patent and Defendants' bottle caps that infringe the '973 Patent are each sold through online marketplaces. *See* Schedule A to the Complaint (identifying defendants by merchant accounts on eBay.com, Amazon.com, Walmart.com, and Aliexpress.com). Additionally, the vast majority of customers will purchase all of their water bottle caps from a single source, likely in a single transaction, because they are sold in bulk and are reusable. Thus, each sale of an infringing bottle cap made by Defendants is a sale that Steel City cannot make.

To the extent a customer needs to make additional purchases, the loss of that initial sale results in the loss of the potential to make the ongoing sales for replacements due to damage or loss of the initial bottle caps. For instance, if a consumer purchases one of Defendants' infringing products, that is a lost sale of Steel City's own patented product and a lost potential for repeat or returning sales should the original product need to be replaced, because the customer is likely to return to the original sale for the replacement sale. This is particularly true with the Amazon.com marketplace because consumers are shown their past sales and encouraged to reorder from the same listings used for those prior sales.

Moreover, because of the branding included on Steel City's Jug Plug products, it is reasonable to infer that the sale and use of its patented product increases the exposure of its products to new customers who might observe the Jug Plug in use. This leads to a continuous harm in the form of loss of potential customers, which in turn reduces Steel City's hard-earned market share. *See generally Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154 (Fed. Cir. 2011) (considering loss of access to potential customers as evidence of irreparable harm). Consequently, Steel City's market share is actively being harmed by Defendants' continued unlawful conduct.

D.  **The Balance of Hardships Favors Steel City**

The third factor, the balance of hardships, favors Steel City as well. As noted above, the stronger the showing of likelihood of success on the merits, the less the balance of harms needs to weigh in Plaintiff's favor. *See Chicagoland Aviation, LLC v. Todd*, Case No. 12-c-1139, 2012 U.S. Dist LEXIS 167796, *6 (N.D. Ill. November 27, 2012). In other words, "[t]he magnitude of the threatened injury to the patent owner is weighed, in the light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer if the preliminary decision is in error." *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir.

1987) (overturned on other grounds by *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995)).

As set forth above, Steel City has made a strong showing of a likelihood of success on the merits of its patent infringement claim; thus, the balance of hardships need only weigh slightly in its favor. Likewise, Defendants appear to be "bazaar-style" sellers who sell a wide variety of unrelated products. Thus, the infringing products appear to be only one of several different revenue streams available to the Defendants and restraining just one of those products is unlikely to have a significant impact on the Defendants' business operations. In any event, the only potential harm to Defendants if this TRO is granted is that it would not be permitted to continue to sell an infringing product. This type of harm is a consequence of Defendant's own infringing activity and therefore should not be considered when weighing the harms. In contrast, Steel City will suffer immediate irreparable harm for which there is no adequate remedy at law if this TRO is denied, as set forth above. Accordingly, the balance of harms weighs strongly in favor of Steel City.

### E. A Temporary Restraining Order Will Not Harm the Public Interest

The starting point for analysis of the public interest is favoring protection of a patentee like Steel City because of the "strong public policy favoring the enforcement of patent rights." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996). Thus, the inquiry should be "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1998). Here, there is no public interest, let alone a critical one, that will be injured by the grant of a TRO. The public has an interest in the functioning of its patent system and in encouraging fair business practices. *See PPG*, 75 F.3d at 1567. Accordingly, no public interest will be harmed by a TRO.

## IV. CONCLUSION

Due to the strong likelihood of success on the merits of Plaintiff's case and the irreparable harm that would result without a temporary restraining order, Plaintiff respectfully requests that its temporary restraining order be immediately granted.

DATED: May 23, 2023                                   Respectfully Submitted,

/s/ Nicholas S. Lee
Edward L. Bishop
ebishop@bdl-iplaw.com
Nicholas S. Lee
nlee@bdl-iplaw.com
Benjamin A. Campbell
bcampbell@bdl-iplaw.com
BISHOP DIEHL & LEE, LTD.
1475 E. Woodfield Rd., Suite 800
Schaumburg, IL 60173
P: (847) 969-9123
F: (847) 969-9124

*Counsel for Plaintiff Steel City Enterprises, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this May 23, 2023. Any other counsel of record will be served by electronic mail and/or first-class mail.

/s/ Nicholas S. Lee
Nicholas S. Lee